So we will begin by calling In Re McGraw Hill Global, Ed Owell, counsel. Good morning, your honors. Good morning. May it please the court, my name is Beth Weiser, and I represent McGraw Hill Global Education Holdings, LLC, and McGraw Hill School Education Holdings, LLC, in these proceedings. I'd like to request three minutes for rebuttal. Granted. Thank you. Your honors, this is a case about contract enforcement. Cases. Cases, that's true. Two cases about contract enforcement. Did the complaints plead breach of contract? They did not, your honor. So plaintiff's the master of his or her complaint, correct? Yes, your honor. So aren't the cases about copyright infringement? Your honor, they are. They do plead copyright infringement claims, but those copyright infringement claims are related to, and in fact grow out of, contracts that determine the scope of the licenses that are at issue here. And when the question is one of the scope here. copyrights to the copyrighted material derive any way from this contract between Corbis and your client, are you? Not the rights, your honor, no. But the question of whether or not McGraw Hill has exceeded the terms of the license grow out of contract. When the dispute is essentially one regarding the scope of the license as opposed to the existence. It's an important language, isn't it? Regarding. Isn't that an important language for our purposes here? If we're going to first center on the scope of the license, nobody disputes there was a license, right? We certainly do not, your honor, and I don't think the plaintiffs would either. Right. So that leaves us with a question as to what the scope of that license is. Does it not? Yes, your honor. And from that, it has been contended by a plaintiff that there has been a violation of their copyright. That their rights under the copyright laws. Yes, your honor. So whose burden is it then to demonstrate that, well, it's going to be the burden of the plaintiffs to show that there's unauthorized use of the copyrighted material, is it not? Subject to the license? Yes, your honor. It is the plaintiff's burden exactly to show that there has been unauthorized use or use that has exceeded the scope of the license that was granted to McGraw Hill for the use of these photographs. As long as there was a license. As long as the parties agreed that there was a license. Yes, your honor. The burden might be otherwise if there was some dispute as to whether or not there was a license. Yes, but as long as it's the scope of the license or whether or not the terms of the license has been exceeded, it's well established that the burden is on the plaintiff to establish the breach or to establish conduct in excess of that license. I realize plaintiffs are probably going to argue otherwise, but I understand that that's your position. Yes, your honor. That is our position. I thought your position was that they were intended third party beneficiaries. That is also why Mr. Cashi and Mr. Crist are bound by the forum selection clause that appears. All right, so if McGraw Hill didn't pay Corbis, you agree then that Cashi and Crist would have a direct action against McGraw Hill for nonpayment to Corbis? If McGraw Hill didn't pay Corbis. Yes, your honor. Then you concede that Cashi and Crist would have a right of direct action to sue your client, McGraw Hill, for that failure to pay Corbis. That's in Corbis' full agreement, isn't it? Doesn't Corbis provide them contractually, the photographers, the right to come against your client in the event that Corbis doesn't take such an action? Yes, your honors. But in this case, the action arises by virtue of the two relationships between, first, the plaintiff photographers and Corbis, and then the second relationship between Corbis and McGraw Hill. Well now, haven't you in another case, a similar type case, argued that the copyright holder did not have a right of direct action against McGraw Hill to recover royalties that were due? Your honor, I believe, are you referring to the Lefkowitz case, Judge Roth? That would be the case. Yes, I am. Okay. Your honor, McGraw Hill respectfully submits that the citation in reference to the Lefkowitz case is actually out of context here. That was a different provision in the agreement. It was a question of standing to pursue a breach of contract claim based on a penalty clause. Well, here's what I believe you argued in your memorandum in support of judgment on the pleadings. There was such a motion in the Lefkowitz case, wasn't there? I believe there was, your honor. The language was that, before the Southern District of New York, that the Corbis-McGraw-Hill agreements, quote, do not identify any third party in their choice of foreign provision, unquote, which, quote, strongly suggests that the two parties to the contract intended the contract to conserve and to benefit only themselves. So isn't Judge Roth right? Your honor, I'm certain that you have correctly read our briefing from that case, but what I would submit and what I would direct your honors to is that McGraw-Hill's positions are not inconsistent because, in the Lefkowitz case, McGraw-Hill actually took the very same position on the foreign selection clause, as it pertained to Mr. Lefkowitz, that it has taken in the Kashi and the Crist cases. Let me jump ahead here because it does seem to me, as Judge Roth's question suggests, that you have either taken conflicting positions or at least that you have believed that the law was sufficiently unclear, malleable, if you will, that you could take disparate or somewhat inconsistent positions. We're here on appeals from two mandamus proceedings. Doesn't that make mandamus awfully difficult or make it difficult for us to say ultimately that mandamus lies if the law is unclear, at least if that's the theory, the intended beneficiary theory we're pursuing? The intended beneficiary is one of the reasons that we are, that McGraw-Hill has argued, that the plaintiff photographers are bound by the foreign selection clause. And that's where Judge Davis found an intended beneficiary status, did he not, in ruling for you that the SDNY was an appropriate place? Yes, Your Honor, that's in the Crist case. Judge Davis found that Mr. Crist was an intended beneficiary of the agreements between Corbis and McGraw-Hill. And certainly that is the case because the plaintiff photographers here, they are named, they are identified in every one of those invoices by name between Corbis and McGraw-Hill. The photograph that is at issue is identified in every one of those invoices. What evidence is there in the record here that the photographers were intended beneficiaries? Your Honor, first and foremost, I would point to the invoices between Corbis and McGraw-Hill. We're seeing 50% of the royalties, is that what you're referring to? That is part of it, Your Honor. Is it part of it or is it the only thing? First of all, both of these were non-evidentiary proceedings, right? I think there was only argument conducted. Yes, there was briefing arguments. So we really had nothing in the way of evidence other than what can be derived from the pleadings. But I wasn't able to see that there's anything here pointing toward intended beneficiary states other than the receipt of the 50% of the royalties. Judge Roth, you still have dogs. I didn't think you did anymore. That's not a safe regard, is it? I will shut the door. No, don't worry. We're taking many of the questions I've been asking, Judge Roth. Is there any other evidence than the 50%? Yes, Your Honor. There is the fact that these photographers are identified by name in each of those invoices between Corbis and McGraw-Hill. But isn't that in the description of the subject matter of the contract between Corbis and McGraw-Hill? They're describing the subject matter are photographs by such and such a photographer. That doesn't mean that the photographer, having given a license to Corbis, is interested in the negotiations between McGraw-Hill and Corbis. Your Honor, they may not be interested in the negotiations between McGraw-Hill and Corbis, but indeed the very reason that they are licensing their photos to Corbis is for Corbis to then sub-license them to a publisher, such as McGraw-Hill, for Corbis' benefit as well as for the plaintiff photographer's benefit. And in addition to those invoices identifying the photographers by name and identifying the photographs by name, the plaintiffs also receive royalty statements showing that, in fact, Corbis has carried out its task and has sub-licensed its photos to a publisher, such as McGraw-Hill. Were some of their copyright claims unrelated to those invoices? Not in the case of Mr. Crist, Your Honor. In Cashi, there's approximately 85% of Mr. Cashi's claims are based on Corbis' invoices. 15% aren't? Yes, Your Honor. Okay, and where in the Cashi case did you allege that he, Cashi, was a third-party, an intended third-party beneficiary? Where, in the Cashi case? Right, in the district court. I didn't see that. I'm happy to take a look at our briefing, Your Honor. I don't have the actual citation. It's just certainly strange, because you kept using the phrase, closely related. And to me, third-party beneficiary is a phrase of art. Right. And that phrase of art was lacking, at least as far as I could tell, in the Cashi case. And perhaps even the Crist case. As far as I could tell, the first time it came up was when Judge Davis wrote that in his opinion. I'm happy to look. Maybe Dr. Baldwin, you could deal with that. Sure, absolutely. And I would posit that either a third-party beneficiary or someone who's closely related as a non-signatory can be held to a foreign selection case. That's certainly the law in this circuit. We have those alternate theories here. And I'd like, Greg, would you put five minutes more on the clock? In fact, in your oral argument case summary that I believe appears on the docket frames, the underlying question is whether a non-signatory who receives 50% of the benefits of a contractual agreement is bound by a foreign selection clause. That may be the case, except is there anything in the Corbus McGraw-Hill agreements that entitled the photographers to these benefits? That entitled the photographers to the? To those benefits. To the 50? Well, that is the interplay between the two contractual relationships. The interplay. Yes, Your Honor. There is the relationship number one between the photographer and Corbus. We would agree that the photographers received their benefits, if that's what we want to call them, pursuant to their agreements with Corbus, right? Yes, Your Honor. Okay. And you characterized that somewhere in your briefing as a direct benefit, haven't you? Haven't you used that? Yes, in the sense that they are a direct beneficiary. What's direct about that? Given the fact that we have two separate contracts and the 50% derives from the initial contract between Corbus and the photographers. No, they would not receive that benefit were it not for both of those contractual relationships. In order for them to obtain that benefit, that 50% benefit, the contract between Corbus and McGraw-Hill has to exist. That's true, though, in any downstream purchase situation, right? So does that mean every manufacturer is an intended third-party beneficiary of a downstream contract? Your Honor. If you're a bottle, say you're an independent bottler and you have a license to bottle ginger ale for Canada Dry or something, right? And that's your contract. Canada Dry gives you the license to do that and they pay you to fill the cans with ginger ale. So every time that can goes through the supply chain, gets sold to a grocery store, a convenience store, whatever, the independent bottler is a third-party beneficiary of those downstream transactions? No, Your Honor. I would not agree with that characterization because in that case, I don't think the independent bottler would be specifically identified in the transaction. So that's the key, then. As long as they're sort of named in the downstream contract, that renders them a third-party, an intended third-party beneficiary. I think that's certainly a large piece of it. They are specifically identified by name. This isn't a contract where we have some unknowing or unassuming consumer or, in your case, one of many bottlers that bottles ginger ale for Canada Dry and then gets sold to 1,000 different grocery stores. These are photographers who are licensing to Corbis for the express purpose. So if Corbis takes Cashy and Chris' photos and does deals with 1,000 publishers, those photographers are intended third-party beneficiaries in all 1,000 of those downstream deals? Assuming that the Corbis invoices underlying the transactions with those publishers are the same as the Corbis invoices underlying the transactions with McGraw-Hill, as well as the pricing agreements between Corbis and McGraw-Hill, both of those documents, but assuming that the Corbis employs the same invoices and the same pricing agreements with those publishers, then yes, the same logic would apply. Does it change if instead of a 50% royalty, it's just a flat fee? If Corbis had just paid Cashy and Chris a flat fee for this bundle of photographs on $100,000 and then Corbis went ahead and negotiated whatever deals it wanted with McGraw-Hill and all of the money that McGraw-Hill paid Corbis stayed with Corbis? That's an interesting question, Your Honor. It's certainly not one that we had briefed below, but that might change the analysis. So it's about the disclosure and the royalty then? Yeah, in that case, the photographer would not be aware that Corbis has licensed them to McGraw-Hill. Is that what you're saying in your scenario? They would just turn them over to Corbis and then whatever Corbis does with them, does with them. Yeah, I think that does alter the scenario because the intent is different. Well, here there was no requirement that McGraw-Hill just sell Cashy pictures or Chris pictures. They could sell any photograph that they had a license to, and so the plaintiffs here had no interest in who McGraw-Hill was selling to. McGraw-Hill could purchase from Corbis the photographs of any photographer, so that the mention of the photographer in the contract was not to ensure that Corbis was only selling Chris or Cashy photographs, but simply to identify what photographs were being licensed in that agreement. That is correct, Your Honor. Corbis could sell and McGraw could purchase photographs from a variety of photographers, and in fact that does happen, but the fact that these specific photographers, Cashy and Chris photos, were sold to McGraw-Hill, and McGraw-Hill made the uses of those photographs that were authorized by virtue of those agreements, results in the specific identification of these photographers, and as a result of that identification and the purchase of photos from those photographers, they end up receiving 50% of the fee. Ms. Weiser, we're all here on mandamus. It's an extraordinary remedy. It's a steep hill to climb. You argue in Cashy that the right to mandamus relief is clear and indisputable, because Judge Beedlestone failed to apply this court's precedence in the Supreme Court's Atlantic Marine holding. Those are the words in your petition. Judge Beedlestone agreed that Atlantic Marine would apply, but only if Cashy were bound by the form of selection clause. So what I'd like to know is, because we're here on mandamus, if you put aside then Atlantic Marine, which is what she was doing analytically, what precedent did Judge Beedlestone clearly ignore? How did she abuse her discretion in applying? Putting aside Atlantic Marine? Yes, putting aside Atlantic Marine. Well, we think the abuse of discretion was the failure to find that Atlantic Marine would control here. So Atlantic Marine trumps everything? Atlantic Marine somehow, sub silentio, has disposed of the form selection clause, or rather the third party issues that exist in this case? Well, if this court were to find that Atlantic Marine applies, then the analysis is compressed to an inquiry of factors other than the convenience factors of the party. And Atlantic Marine's holding is that in the presence of a valid form selection clause, it must be transferred unless extraordinary circumstances exist that would otherwise justify not transferring it. And the plaintiffs here have not created a record, have not shown that those extraordinary circumstances exist. All right. Judge Ross, do you have any questions before we turn to the other side and then have Ms. Wasser back on rebuttal? No, I do. All right. Thank you. Thank you very much. We'll have you back on rebuttal. Mr. Harmon. My name is Maurice Harmon. I represent Bob Crist and Ed Kashi. I would like to reserve five minutes, if I could, since this is an unusual situation. I'm a petitioner. You're both petitioners, so you'll be afforded that opportunity. Just a bit of underbrush regarding this name in the invoice or name in the agreement. The identification of the photographs, because there is a requirement to have a photo credit in the publications that textbook companies often produce, necessitated that information in the invoice. There's no such information in any other agreement. So let's talk about a PPA, Preferred Pricing Agreement. Several of them. There's no question Crist and Kashi's names were not in those agreements because they're not party to those agreements. And I would suggest that the names that are listed in the invoices are not relevant. They simply identify the photographs so you can tell what photograph you're using. And in any event, naming the photographer doesn't somehow pull this photographer into the agreement between Corbus and McGraw. We agree with the observations of Judge Roth in that regard. We cannot be more different in our view of how copyright infringement cases arise. The opening statement of McGraw's attorney was that this is a contract interpretation case. This is no such thing. It never has been. Not so far as the plaintiff is concerned. Well, correct, but we would submit not so far as the Copyright Act provides for. Copyright infringement is a claim derived from the Copyright Act. It's not a breach of contract claim. Breach of contract, McGraw would love to have this categorized because then they would just have regular damages. The money they should have paid decades ago to these photographers. And to this day, they're still not paid. Right, it's clearly a copyright action. But the harder question, I think, is whether your clients are intended third-party beneficiaries. That's one way to put it. Right, and you make, I think, a fairly strong argument in your brief about the reasoning in the Muhammad Ali case in the Seventh Circuit, right? And the problem, I think, with that is that you're saying that we, in the Dun & Bradstreet case, should not have put the word unauthorized in as your burden, but rather that should have been a defense. That's true. Okay, but this panel doesn't have the power to overrule Dun & Bradstreet. So tell us how we, assuming you're correct that Muhammad Ali is well-reasoned, how do we get out from under the word unauthorized in Dun & Bradstreet? Well, I would suggest that you might follow the lead of Chief Judge Wood and Posner and Rother. That's contrary to the question that's been asked. We have our precedent. We can't follow the direction of another circuit's judge or panel. Well understood, but here's the better answer. The statement by Dun & Bradstreet was not in consideration of the elements of copyright infringement. That was just a statement. So it's just dicta, then? It's not necessary to hold them accountable? Correct. Much like what the Supreme Court said in the media last year, when it said there's 200 rulings, it said registration was jurisdictional, and they said those were dry-fired rulings, and it's true. Nobody really analyzed the question as part of the case, and that's true of Dun & Bradstreet. But the prior cases did follow Feist, and the reason that you... Doesn't it matter, doesn't it matter, and didn't it matter, in Dun & Bradstreet, in Muhammad Ali, and here, whether or not the existence of a license is disputed, and therefore... Excuse me, Judge Smith, can you keep your voice up, please? Doesn't it matter... I thought the old radio voice working in a microphone was better than it is. It's age, I guess. Doesn't it matter whether or not the existence of a license is conceded, and we are simply talking about the scope of the license, or whether what is at issue is the existence of a license, in which case we may be dealing with an affirmative defense being raised, right? Correct. You have conceded the existence of a license here. I have not. You have not. We have not. I understand the courts... What did you say? You're not going to fight, please. They're going to admit, I mean, their defense quickly is going to be, we had a license, we were permitted to do this, and then your response will be, yeah, but you exceeded the license. That's where this is headed, right, if it goes to trial. Well, not according to what he's telling us so far, Tom. That's correct, Judge Smith, Chief Judge Smith. And here's why, because admittedly, the complaint states a scenario from which you could conclude that there is an acknowledgement of a license, but here's why it's not correct. First, the complaint does not drive the legal theories that you can raise in trial. It states facts. Every time we file copyright infringement claims against McGraw, and McGraw has been adjudicated three times to be an infringer, we don't care about every time. We care about this case. Whether or not there was a license in this case, or whether or not what is at issue is the scope of a license in this case. And you're saying you didn't plead that. But you have to admit that is going to be part of the case if it goes forward, right? I think you're just denying reality if you say otherwise. We're not in this respect. Our view is these licenses are limited. They're like a car used in the subway. You get $20 once that car is used. Right, right. But that goes without a license. You can't jump the turnstile after that. But I think we're in a semantic debate now about whether it's scope or a license at all. But the fact that you've conceded that there is some license out there, but I understand your argument to me, and correct me if I'm wrong, but your argument is that's beside the point because you didn't plead the license, and you don't need to plead the license. What you pled was they violated our copyrights. Correct. We own the copyrights, and they copied the work. And in this case, it's complete copying. So at that point, we have sufficiently made our prima facie case of copyright infringement. They keep wanting to say somehow we have to go find their license, that we then have to disprove that they used the work within the license limits. And if we don't do that, we don't establish our prima facie case. And therefore, they don't have to assert an affirmative defense. And more importantly, they bootstrap in the license agreement and say, Hey, this license agreement contains the forms for auctioning cloths. You better send this to our favorite jurisdiction, the SDNY. The record doesn't contain the actual contract between your client and Corbis, does it? And Corbis? Yes, and Corbis. That's correct. That's right. You have not disputed, however, that the form that was supplied in this case is an accurate representation of what the written contractual arrangement was between your client. We do know that it was pretty close to that. We did not include it because we didn't think it was relevant, and we still don't think it's relevant. That's a contract between Corbis and Kashi, Corbis and Christ. We're talking about contracts between Corbis and McGraw. But ultimately, if there were a license to be found here, that license would be derived from the contractual arrangement between your client and Corbis. Not really. It would be derived from the license between Corbis and McGraw. Corbis is a sub-licensor. Well, they can only be a sub-licensor if you have accorded to them the same bundle of rights in your arrangement with Corbis. Otherwise, they'd have no authority to do so currently. But the license defense that they would raise, McGraw would raise, would be because of the license they got from Corbis. That agreement wouldn't have anything to do with, I mean, you can trace it back to ownership, but it wouldn't have anything to do with, it's our view, with Corbis and Kashi or Corbis and Christ. So with respect to the argument here and the progression of it, we forget about intended beneficiary or closely related parties if the claim does not arise from an agreement. It's only if the claim arises from an agreement can you be bound to that agreement and that clause within the agreement. So I first, and I think it's Judge Beedlestone, Judge Ruth, Judge Rubino, Judge McHugh, all the judges that explicitly decided that these claims are not related or do not grow out of licenses had it right. You don't go to that next level of consideration unless you find that somehow the copyright claims grow out of the license that McGraw may or may not have had. And let's crack one other thing. We're not contending that every claim that we've brought originated in some way or somehow related to a license. There are many instances, and Mr. Beal and McGraw knows, where they have no license whatsoever at any point in time. There's totally unlicensed uses, never a license in the first place. And those claims are pleaded in the complaint and certainly part of our claim, and cases have borne that out through discovery. They had such a loose system of keeping track of this film that a piece that was licensed over here would be used over there, and no one in this courtroom would dispute that. Would you concede that your client was an incidental beneficiary of the agreement between Corbis and McGraw-Hill to the extent that your client received royalties payments from Corbis that resulted from the proceeds of the arrangement between Corbis and McGraw-Hill, merely an incidental beneficiary? Yes. Okay. But there's no need to even get into that kind of analysis whether an incidental beneficiary somehow binds a non-signatory to a form selection clause if the claim that's being asserted does not emanate from that agreement. There's no dispute here about these agreements. We're not saying that McGraw did not comply with the invoice requirements. We're not saying that the PPA agreements were violated in some way. We're not trying to assert any rights under the invoice. Our view is once the invoice turns, once that license is used up, you don't have a license anymore. And if you continue to use the word, you are like a stranger. That's what the case on the block says and other cases that have analyzed this idea and that we're not into a matter of scope. Scope is something that's litigated often when there's an ongoing licensing arrangement and somebody's complaining about part of the license being unclear and that what they have done is really within the license. That's not happened here. They had a right to print 40,000 copies. They printed 400,000 copies. They're not coming into court and saying, oh, we have a dispute about the scope. 40,000 doesn't mean 400,000 or 40,000 doesn't mean 400,000. What we're saying is the license is used up. It's a temporary license. Once you use it up and you continue forward, you don't have a license. What if they had a license back in 2000 for a particular image? Does that mean that if they infringed the copyrights of that image in 2018, somehow because they once had a license back in 2000, that that implicates that license and that we're going to fight about whether that's still within the scope of license? No. Judge Roth, do you have additional questions? We've afforded both sides about 20 minutes at this point. I have no additional questions. Thank you. All right. Thank you, and we'll have you back on rebuttal, Mr. Harmon. Ms. Weiser, I think you reserved three minutes. Yes, Your Honors. A couple of points in response. Of course the plaintiffs have admitted the existence of a license. There are claim charts attached to their complaints that identify it. They clearly acknowledge the existence of a representation agreement. Is that something from which either of the district courts inferred for factual determination purposes the existence of a license, even though these were not evidentiary proceedings? Did they, in their opinions, Judge Beetlestone's order and footnote and Judge Davis's opinion? Your Honor, I don't know if they inferred that for the purposes of their opinion from the representation agreements, but in considering the exhibits to the complaint where the plaintiffs identify the invoices at issue, and I would direct Your Honors just by way of example only to the answer brief of McGraw-Hill in the Crist case here, starting on page 18 and going through probably pages 22 or 23, where McGraw-Hill provides examples of the plaintiff's exhibits to the complaint where they say invoice number 12345 provided for 40,000 copies and the other terms of use that McGraw-Hill was authorized to make of those photographs by virtue of those invoices. So I think it's completely disingenuous to say that the plaintiffs have not admitted the existence of a license. In terms of Mr. Harmon's comments regarding unlicensed use, there's no evidence of unlicensed use of any of Mr. Kashi's or Mr. Crisk's photos in this case. And in fact, some of the licenses still have use remaining. If 400,000 copies were authorized, McGraw-Hill has not, in the case of every one of these licenses, used up all of the uses that it was authorized to make in every one of these cases. I'm still trying. Isn't that an issue that needs to come up at trial and not at this point? Yes, certainly it will, Your Honor, and that is exactly why... At trial where? In the Southern District of New York, Your Honor. But that is exactly why the invoices are at issue. The plaintiffs try to say... As a defense, though, right? No, Your Honor. This is a critical point, isn't it, about the unauthorized? Your Honor, it is a critical point, and we don't think it comes up as an affirmative defense. We think it comes up... You think they, in their case in chief, they need to... It's not sufficient for them to allege and put on evidence that Cashi and Crist own the copyrights and that you used them in violation of their copyright. They have to show that it was unauthorized in their prima facie case? Yes, they do, Your Honor. And what's the authority for that? That is... The line of authority starts with Dun & Bradstreet. Okay. Now, Dun & Bradstreet does have the word unauthorized in there. I'm looking at page 206, right? Okay, Your Honor. And Dun & Bradstreet, in reliance for that proposition, Judge Rosen's opinion in Dun & Bradstreet cites Waylon, correct? 797 F. 2nd at 1231. I'm looking at Judge Becker's opinion in Waylon. It doesn't say unauthorized. So that... How can we conclude anything other than the fact that unauthorized was inadvertently or perhaps mistakenly put into Dun & Bradstreet? I don't have the opinion in front of me at the moment, Your Honor. Well, I'll tell you what Waylon says. I'll quote it for you. Sure. The elements of a copyright infringement action, that's the heading, to prove that a copyright has been infringed, Waylon Associates must show two things. One, that it owned the copyright. And two, that Rand Jaslin copied. That's a lie. The word unauthorized... And I did a word search. The word doesn't appear anywhere in the opinion. So in addition to what we sort of chastised Mr. Harmon about, that a panel of this court can't overturn a prior panel, we also have a doctrine that says that when a prior panel says something that contravened what a prior panel said, we go back to the first panel. So why should we not adhere to what Judge Becker articulated the law to be in Waylon, rather than endorse this use of unauthorized, which Chief Judge Wood, I thought, fairly compellingly explained in detail, was errant. Of course, Your Honor. But if you think about it from sort of a common sense approach, in order to show copyright infringement, it makes sense on a very basic level that you have to show that the use was unauthorized. Because photographers and artists license their work all of the time for use by third parties. And it sort of defies logic that every one of those uses would constitute a claim for copyright infringement when there is admittedly a valid license in place. Let me return to my inquiry about the nature of the relief sought here. Man Davis. I was going to ask you if just the split among the judges in the Eastern District of Pennsylvania points to a lack of clarity in the law, and therefore more than difficulty for you in demonstrating some clear and indisputable right to relief. But Judge Hardiman's questions, I think, fortify that concern of mine. If we are here talking about disputing whether or not this court inadvertently, in one of its precedents, set out an element that should not be an element, hasn't the jurisprudence that we're applying here become even murkier for purposes of what ought to be expected of a district judge in these cases, or how a district judge should go about resolving one of these cases, and therefore make Man Davis unavailable to you? Respectfully, Your Honor, no. I do not think that's the case. The Man Davis standard is an abuse of discretion. And in this case, the district court, particularly, we believe Judge Biddlestone, abused her discretion by failing to apply coastal steel in terms of finding that a non-signatory can be bound by forum selection clause. And for that reason, we believe that Man Davis is an appropriate remedy here. Judge Roth, any further questions on rebuttal? Judge Roth? No, I'm sorry. I have no further questions. Thank you, Mary. Just one more point, Your Honor. Judge Hardiman, you asked me about the Kashi briefing and the intended third-party beneficiary. I would direct you to page 24 through 26 of McGraw-Hill's opening brief. Can you hear me? Yes, Your Honor. That wasn't my question. Oh, I'm sorry. Where did you raise it in the district court? I didn't see it raised. Oh, okay. I'm sorry. I thought you meant in here. You didn't submit a 28-J? I don't think it was raised in the district court. At least, I didn't see it. Okay. If it was, feel free to correct the record through a 28-J letter. Okay. Thank you, Your Honor. Thank you. Mr. Hardiman, rebuttal. I would just like to talk about another matter related to whether— Before you do that, could you pick up on Chief Judge Smith's question about mandamus? I share his concern. And, I mean, these seem like really close judgment calls. We've got a lot of intelligent, diligent district judges who are seeing this different ways. That would seem to be prima facie evidence that this is not worthy of mandamus in the typical sense. But is there some reason to believe that we should grant the mandamus precisely because there is this difference of opinion below? And is there any authority for that proposition? Or do you agree with Ms. Weiser that, no, no, this is just crystal clear and you win? I think that the comments and concerns are well taken with respect to these two basic camps. Although, the Third Circuit, in my view, and maybe this isn't the right time, should clarify whether copyright infringement claims arise from the Copyright Act, or somehow you take an affirmative defense. And because in the affirmative defense you may have some evidence to defend yourself, a license, that somehow that would require the binding of a plaintiff in a copyright infringement case to a form of selection clause between two other parties. I think that part is pretty clear. And with respect to some of the judges, like Judge Smotsky, for example, there was a breach of contract claim that was filed in addition to that. You admit that that's a loser. Once the plaintiff, as master of the complaint, sues under contract, they have to take the bitter with the sweet and accept the form of selection clause they don't like. You were smart enough to avoid that trap. Well, he didn't run up to the court on a petition for a mandate, saying somehow that you should disregard that. But Judge Davis is a bit different, we think, because he did three things. He based his transfer order on intended beneficiary. He found they were intended, that Chris was an intended beneficiary. He had some evidence to do that, though, didn't he? I'm not saying he was right by that question. I'm simply suggesting that he had before him a very limited record, again, non-evidentiary proceeding, but that record included a contract that even you have agreed is representative of the representation agreement between your client and Corvus, right? Correct. Let me finish. And that agreement included a form of selection clause, didn't it? Correct. So he had something to get his hands on in terms of looking to foreseeability. But if the dispute were between Corvus and Crist, understood, we've got to go to New York and look at that. I understand. That's the bottom line. I think your argument is you don't even get to intended or incidental third-party beneficiary if your argument on unauthorized and whether this is an affirmative defense carries the day, right? Absolutely. That's your first line of defense, right? Absolutely, yes. And that's the part that probably the court should... And your second line of defense is, hey, we're just incidental beneficiaries. We're not intended. Correct. They have to hit every single base. And the first base is, where do these claims come from? Not some invoice agreement. This is, if Corvus were suing them, sure. If they didn't pay, sure. That's not what we're saying. And make no mistake, Crist is a National Geographic photographer, so is Ed Kashi. They're not out shooting photographs. They're not saying, oh, it's foreseeable that now that Corvus represents me that there's going to be an agreement between some end user and there's going to be a form of selection clause in it, and I should know that. And that was the third thing that Judge Davis found. So he found not incidental but intended beneficiary. He found that the claims depend upon the agreements. They don't depend upon the agreements. They depend upon the Copyright Act and use of an image without a license. And then third, he found them foreseeable by Mr. Crist. So we do think that's an abuse of discretion, and we think that the court should move to issue a writ. By the way, there's another procedural matter. In Kashi, we're all ‑‑ fact discovery is closed. But you're almost out of time, so please make this quick. We're so far along in this case that motions for summary judgment are being filed within less than 30 days. It's gone too far, and the motions for stay that McGraw filed were much later than the petition. They petitioned August 21st. They waited until December 21st to try to stay. All right. Judge Roth, do you have any questions of Mr. Harmon? I have no further questions. All right.  Thank you, Mr. Harmon. Thank you, Ms. Weiser. It's an interesting case and caused us to look into various doctrinal matters and then ultimately decide whether to mandamus lies or not. Thank you very much. We'll take the matter under advisement.